UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **CURTIS M. WILLIAMS**, <br><br> Plaintiff, <br><br> vs. <br><br> **JEFF TANNER, ROBIN HOWARD, VANESSA J. HINOJOSA, and CORRECTIONAL OFFICER MCBRIDE,** <br><br> Defendants. | 2:25-CV-10275-TGB-CI <br><br> Hon. Terrence G. Berg <br><br> **OPINION AND ORDER DISMISSING WITH PREJUDICE PLAINTIFF'S CIVIL RIGHTS COMPLAINT** |

Plaintiff Curtis M. Williams, currently confined at the Oaks Correctional Facility in Manistee, Michigan, filed a pro se civil rights complaint under 42 U.S.C. § 1983. This case comes before the Court on transfer from the United States District Court for the Western District of Michigan. ECF No. 2. The Court has reviewed the Complaint. For the reasons stated below, Plaintiff's Complaint will be **SUMMARILY DISMISSED** for failing to state a legally cognizable claim.

## I.  BACKGROUND

Plaintiff Curtis Williams's claims arose during his incarceration at the Macomb Correctional Facility ("MRF") in New Haven, Macomb County, Michigan. Williams sues Warden Jeff Tanner, Assistant Deputy

Warden Robin Howard, Assistant Resident Unit Supervisor Vanessa J. Hinojosa, and Corrections Officer McBride (first name unknown) in their individual and official capacities. ECF No. 1, PageID.2–3.

On July 11, 2024, Williams received a misconduct ticket from Defendant McBride for failure to disperse. Williams states that prison staff entered the dayroom of Housing Unit 5 that day to restrain another inmate, Clarke. *Id.* at PageID.7. Staff instructed all other prisoners in the dayroom to leave; however, some refused the order and were issued misconduct tickets. Williams was one of the inmates who received a misconduct ticket. *Id.* While awaiting his misconduct hearing, Williams was placed in administrative segregation and received an increase in his security classification to Level IV. Security Classification Screen, ECF No. 1-2, PageID.22.[1]

Williams was ultimately found not guilty of the misconduct because a video surveillance showed that he was in a separate dayroom next to the room where prisoner Clarke was restrained, not in the same dayroom. *Id.* at PageID.7–8; Misconduct Hearing Report, ECF No. 1-3, PageID.23. Williams states that after being found not guilty of the charge, he was transferred to the Oaks Correctional Facility at a Level II security classification, rather than being returned to MRF.

---

[1] Although Williams states in his Complaint that he was transferred to a Level V security classification, ECF No. 1, PageID.7, his attachment shows that he was reclassified as a Level IV, *see* Security Classification Screen, ECF No. 1-2, PageID.22.

2

Williams alleges that Defendants violated his constitutional rights by conspiring to falsely accuse him of committing a misconduct violation and violated his due process and equal protection rights by placing him in administrative segregation, transferring him to a Level IV security classification, and ultimately transferring him to a different prison after being found not guilty. ECF No. 1, PageID.9–10. He seeks monetary and injunctive-type relief. *Id.* at PageID.17–18. Because the Court finds that Williams's claims are devoid of merit, the Court will sua sponte dismiss the Complaint for lack of subject matter jurisdiction.

## II. LEGAL STANDARD

A federal district court's authority to screen and dismiss complaints sua sponte under the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(e)(2), is limited to those prisoner complaints filed in forma pauperis. *Benson v. O'Brian*, 179 F.3d 1014, 1015 (6th Cir. 1999). Plaintiff Curtis Williams has paid the entire filing fee of $350.00, plus the $55.00 administrative fee, rendering inapplicable the Court's authority to screen his complaint for frivolity or maliciousness under 28 U.S.C. § 1915(e)(2).

However, when a prisoner civil rights claim is brought against a governmental entity, a review of the prisoner's civil rights complaint under 28 U.S.C. § 1915A is appropriate regardless of whether the prisoner sought in forma pauperis status. *Benson*, 179 F.3d at 1017. If a prisoner's complaint seeks relief from a governmental entity, officer, or

3

employee, Congress has directed that the district court must dismiss it, or any part thereof, which (a) is frivolous, malicious, or fails to state a claim upon which relief can be granted, or (b) seeks monetary relief from a defendant who is immune from suit for monetary damages. 28 U.S.C. § 1915A. Furthermore, "a district court may, at any time, sua sponte dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) (citing *Hagans v. Lavine*, 415 U.S. 528, 536–37 (1974) (citing numerous Supreme Court cases for the proposition that patently frivolous, attenuated, or unsubstantial claims divest the district court of jurisdiction)).

A complaint is frivolous if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see also Denton v. Hernandez*, 504 U.S. 25, 32 (1992). "A complaint lacks an arguable basis in law or fact if it … is based on legal theories that are indisputably meritless." *Brown v. Bargery*, 207 F.3d 863, 866 (6th Cir. 2000) (citing *Neitzke*, 490 U.S. at 327-28). A complaint fails to state a claim "if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Brown*, 207 F.3d at 867. Sua sponte dismissal is appropriate if the complaint lacks an arguable basis when filed. *McGore v. Wrigglesworth*, 114 F.3d 601, 612

(6th Cir. 1997).

A pro se litigant's complaint should be construed liberally, *Middleton v. McGinnis*, 860 F. Supp. 391, 392 (E.D. Mich. 1994) (Taylor, J.) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); that is, they are held to a "less stringent standard" than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Such complaints, however, must plead facts sufficient to show a legal wrong has been committed from which a plaintiff may be granted relief. Fed. R. Civ. P. 12(b); *Dekoven v. Bell*, 140 F. Supp. 2d 748, 755 (E.D. Mich.) (Lawson, J.), *aff'd*, 22 F. App'x 496 (6th Cir. 2001).

While a complaint "does not need detailed factual allegations," the "[f]actual allegations must be enough to raise a right to relief above the speculative level … on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (footnote and citations omitted). Stated differently, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

5

## III. DISCUSSION

To establish a prima facie case under 42 U.S.C. § 1983, a civil rights plaintiff must show: (1) the defendant acted under color of state law and (2) the offending conduct deprived the plaintiff of rights secured by federal law. *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998). "If a plaintiff fails to make a showing on any essential element of a § 1983 claim, it must fail." *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).

**A. Civil Conspiracy**

Throughout his Complaint, Williams alleges that the named Defendants engaged in a conspiracy to violate his constitutional rights of due process and equal protection of the law. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirators shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565–66 (recognizing that allegations

of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003).

Here, Williams alleges in a conclusory manner that Defendants "knowingly engag[ed] in a chain-conspiracy … to falsely accuse … [Williams] of having refused to leave an area[.]" ECF No. 1, PageID.9. Throughout the Complaint, Williams alleges that each of the Defendants had "knowledge" that the misconduct report was false. He maintains that each Defendant violated Michigan Department of Corrections' policies and procedures in support of his claim. *Id.* at PageID.9–16. He also states that evidence of a conspiracy can be gleaned from the documents signed in connection with the misconduct report. *Id.*

These allegations are insufficient to state a civil conspiracy claim as a matter of law. Williams alleges no facts that indicate the existence of a plan, much less that any Defendant shared a conspiratorial objective. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). As the United States Supreme Court has held, such allegations, while hinting at a sheer "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556–57. Instead, the Supreme Court has recognized that although parallel conduct may be consistent with an

7

unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed … behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567). Accordingly, Williams's bare allegations fail to state a civil conspiracy claim under § 1983.

Moreover, even if Williams could prove the existence of a conspiracy, he cannot show that he suffered a constitutional deprivation based on the dismissed misconduct ticket. *See Scott v. Stone*, 254 F. App'x 469, 474–75 (6th Cir. 2007) (noting that success on a conspiracy claim is dependent on proving deprivation of a constitutional right). First, there is "no constitutional right to be free from false accusations of misconduct." *Jackson v. Hamlin*, 61 F. App'x 131, 132 (6th Cir. 2003) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)). And to the extent Williams claims that his due process rights were violated by the handling of his misconduct ticket, such a claim lacks merit. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486–87 (1995). The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir.

8

2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999).

Further, Williams was found not guilty of the misconduct ticket following a hearing and thus received due process because "[d]ue process of law requires only that the person have the opportunity to convince an unbiased decision maker that he has been wrongly or falsely accused or that the evidence against him is false." *Onumonu v. Mich. Dep't of Corrs.*, No. 1:21-cv-33, 2021 WL 972809, at *3 (W.D. Mich. Mar. 16, 2021); *see also Hursey v. Anderson*, No. 16-1146, 2017 WL 3528206, at *2 (6th Cir. Mar. 31, 2017) (agreeing that an inmate's misconduct proceedings did not implicate a protected liberty interest because he was found not guilty); *Barlow v. Dominguez*, No. 98-2414, 1999 WL 1045174, at *1 (6th Cir. Nov. 9, 1999) (noting that the inmate's "due process rights were protected when, at an administrative hearing concerning the ticket, [the inmate] was found not guilty and the ticket was dismissed").

Accordingly, Williams cannot successfully plead a civil conspiracy claim without stating a plausible claim for violation of his constitutional rights. His conspiracy claim is wholly premised on the issuance of a false misconduct ticket, for which he was found not guilty following a hearing. Williams's due process rights were therefore not violated, and he cannot

9

show that the alleged civil conspiracy was based on an underlying constitutional violation. Williams's civil conspiracy claim fails for this reason as well.

**B. Fourteenth Amendment Equal Protection**

To the extent Williams asserts that Defendants Hinojosa and Howard violated his right to equal protection of the law, he fails to state a claim. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const. amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, a plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator … must be similar in 'all relevant respects.'" *Paterek v. Village of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Here, Williams's Complaint contains no facts or allegations to support an equal protection claim. *See Iqbal*, 556 U.S. at 678. Williams

10

does not allege any facts showing that he was treated differently than any other similarly situated individual. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *Id.* at 678–79; *Twombly*, 550 U.S. at 555. Accordingly, Williams's Equal Protection claim will be dismissed.

### C. Fourteenth Amendment Due Process

With respect to Williams's due process claims, he alleges that once he was charged with the misconduct ticket, he was sent to administrative segregation for approximately 40 days and transferred to a Level IV security classification without due process. ECF No. 1, PageID.7. Williams also alleges that after being found not guilty of the misconduct ticket, he was transferred to another prison.

The United States Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the Supreme Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87; *see*

11

*also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790– 91 (6th Cir. 1995).

First, as discussed above, Williams has not—and cannot—allege that any misconduct he received resulted in a sanction that inevitably affected the duration of his sentence because he was ultimately found not guilty. *See Jackson*, 61 F. App'x at 132; *Onumonu*, 2021 WL 972809, at *3; *see also Hursey*, 2017 WL 3528206, at *2.

Second, as to whether the deprivation imposes an "atypical and significant hardship," Williams has made no such showing. Williams alleges that he was placed in segregation for approximately 40 days because of the falsified misconduct report. ECF No. 1, PageID.7. Confinement in segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983) (superseded by statute on other grounds). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the

12

Sixth Circuit has held that placement in administrative segregation for two months does not implicate the protections of due process. *See Joseph*, 410 F. App'x at 868 (61 days in segregation is not atypical and significant). It has also held, in specific circumstances, that confinement in segregation for a much longer period of time does not implicate a liberty interest. *See, e.g., Jones*, 155 F.3d at 812–13 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). However, periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g., Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest). Accordingly, Williams's 40 days in segregation falls well within the time periods that have been found neither an atypical nor significant hardship.

Next, Williams states that he was reclassified to Level IV while awaiting his hearing and was subsequently transferred to Oaks

13

Correctional Facility after being found not guilty of misconduct. To the extent that Williams is claiming these actions violate his due process rights, this claim lacks merit. The Supreme Court has repeatedly held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum*, 427 U.S. at 228–29. Prisoners cannot "have a protected liberty interest in the procedure[s] affecting [their] classification and security, because the resulting restraint, without more, [does] not impose and 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Cash v. Reno*, No. 97-5220, 1997 WL 809982, at *1 (6th Cir. Dec. 23, 1997); *see also Morris v. Metrish*, No. 97-1624, 1998 WL 246454, at *2 (6th Cir. May 5, 1998); *Moore v. Sally*, No. 97-4384, 1999 WL 96725, at *1 (6th Cir. Feb. 3, 1999). Without such a protectible interest, Williams cannot successfully claim he has been denied due process, because "process is not an end in itself," *Olim*, 461 U.S. at 250, and his due process claim will be dismissed.

For these reasons, the Court concludes that Williams's Complaint must be dismissed for failure to state a claim.

## IV. CONCLUSION

Accordingly, the Court **DISMISSES WITH PREJUDICE** Curtis Williams's civil rights Complaint under 28 U.S.C. § 1915A(b)(2).

The Court further concludes that an appeal from this order cannot be taken in good faith. *See* 28 U.S.C. § 1915(a)(3).

This case is closed.

**IT IS SO ORDERED.**

Dated: September 2, 2025  /s/Terrence G. Berg
HON. TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE